IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROBERT STEVEN EITEMAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-11-4633 |
| | § | |
| CITY OF ROSENBERG, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM AND ORDER

Pending is Defendant City of Rosenberg's (the "City") Motion to Dismiss and for Summary Judgment (Document No. 34). After carefully considering the motion, response, and applicable law, the Court concludes as follows.

I. Background

On December 9, 2009, at about 1:50 a.m., Plaintiff Robert Steven Eiteman ("Plaintiff"), a 63-years-old off-duty City of Richmond police officer who worked in Richmond's canine unit, was pulled over by Defendant's employee, Officer Justin Pannell ("Pannell") of the Rosenberg Police Department, who states he observed Plaintiff driving without a front license plate in violation of Texas law.[1] Plaintiff testified in his oral deposition

---

[1] Document No. 45, ex. A at 1, 2; Document No. 34, ex. H at 50:16-18; id., ex. E at 1.

that he pulled over to the shoulder, stopped, opened his door, got out of his car, put his hands up, and started walking slowly toward Pannell.[2] Plaintiff, who usually wears two hearing aids, was wearing only one at the time because the battery in the second one was dead.[3] Pannell was not acquainted with Plaintiff and was unaware at the time that Plaintiff is hard of hearing.[4]

Pannell yelled at Plaintiff to get back in his car, but Plaintiff did not do so before hearing Pannell yell for Plaintiff to "put your hands on the vehicle."[5] Pannell reports he repeatedly told Plaintiff to come put his hands on the hood of Pannell's squad car.[6] Plaintiff, believing that Pannell was ordering him to put his hands on Plaintiff's car, turned and walked back toward his car to do so.[7] Pannell interpreted Plaintiff's action as defying his instructions and perceived Plaintiff's walking back toward his own car as a potential risk of harm and/or flight.[8] Pannell approached Plaintiff from behind and threw him to the ground as Plaintiff

---

[2] Document No. 34, ex. H at 58:13-18, 59:7-60:6, 63:24-64:12.

[3] Id., ex. H at 61:11-16, 84:18-87:12.

[4] Id., ex. H at 94:15-17; id., ex. E at 1; Document No. 46, ex. D at 14:10-15.

[5] Document No. 34, ex. H at 61:2-16, 64:15-25, 65:10-21.

[6] Id., ex. E at 2.

[7] Id., ex. H at 65:24-66:13; Document No. 45, ex. A at 3.

[8] Id., ex. E at 2.

reached to put his hands on the roof of his car.[9] Pannell pushed Plaintiff forward on his stomach and attempted to bring Plaintiff's hands behind his back to handcuff him.[10] Pannell struck Plaintiff once in the shoulder with his hand, telling him not to push up, and then handcuffed Plaintiff.[11] Pannell remained on top of Plaintiff, with his knee on the back of Plaintiff's neck and head, while he called for backup.[12] Pannell pushed Plaintiff's face into the asphalt.[13] This was all recorded on Pannell's dashboard camera.[14]

---

[9] Document No. 34., ex. H at 67:13-25.

[10] Id., ex H at 69:13-70:13, 71:1-21., ex. E at 2.

[11] Id., ex. H at 77:20-78:10, ex. E at 2. In his deposition, Plaintiff testified that he was already handcuffed when Pannell struck him. Id. at 74:18-21. This is clearly contradicted by the video evidence, which unambiguously shows that Pannell's single blow occurred before he had handcuffed either of Plaintiff's hands. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 127 S. Ct. 1769, 1776 (2007) (reversing decision denying summary judgment when clear video evidence contradicted plaintiff's testimony).

[12] Document No. 34, ex. H at 77:2-19; id., ex. I. Pannell testified in his affidavit that he used no further force after the handcuffs were applied. Id., ex. E at 2. This is contradicted not only by Plaintiff's testimony, but also by the video evidence, which shows that Pannell did briefly get off Plaintiff after handcuffing him, but when Plaintiff began to rise, Pannell again pushed him down and held him with his knee while he called for backup. Id., ex I.

[13] Document No. 34, ex. H at 77:11-16.

[14] The Court has reviewed the video recording, found at Document No. 34, ex. I and at Document No. 46, ex. E.

Pannell then had Plaintiff stand up, brought him to Pannell's car, and told him to get in the back seat.[15] Plaintiff had difficulty getting his legs into the vehicle.[16] At one point, Pannell threatened to "tase" him if he did not comply, but Plaintiff does not allege that Pannell used excessive force after that time.[17] After Plaintiff was secured in the backseat of Pannell's car, backup officers arrived at the scene.[18]

Pannell transported Plaintiff to the Ford Bend County Jail, where he was charged with driving while intoxicated and resisting arrest.[19] Both charges were eventually dismissed by the prosecution, the former after the County Court found that there was no probable cause for Plaintiff's detention and arrest.[20]

On December 5, 2011, Plaintiff filed this lawsuit, which the City of Rosenberg removed to this Court.[21] The Original Petition alleges that the City has a pattern, policy and practice of wrongful detention, false arrest and use of excessive force in violation of 42 U.S.C. § 1983, and conspiracy to violate civil

---

[15] Document No. 34, ex. H at 83:2-7, 91:2-5; id., ex. E at 2.

[16] Id., ex. H at 90:23-91:9, 92:12-22; id., ex. E at 2.

[17] Id., ex. H at 93:1-19, 94:3-5.

[18] Id., ex. H at 90:13-18, id., ex. E at 2.

[19] Id., ex. E at 2.

[20] Id.

[21] Document No. 1, ex. 1 ¶ A (Orig. Pet.).

rights under 42 U.S.C. § 1985, which resulted in Plaintiff's "detention, arrest, prosecution, and use of force without probable cause," and for which Plaintiff seeks recovery of his damages.[22]

## II. Evidentiary Objections

The City objects to portions of Plaintiff's affidavit,[23] alleging that they impermissibly contradict Plaintiff's earlier sworn testimony, lack foundation, or improperly state legal conclusions.[24] A party may not defeat a motion for summary judgment by introducing an affidavit that contradicts his prior sworn testimony. S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 495 (5th Cir. 1996). Furthermore, "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony." FED. R. EVID. 602. Legal conclusions by Plaintiff are also inadmissible. See Owen v. Kerr-McGee Corp., 698 F.2d 236, 240 (5th Cir. 1983).

The City's specific objections are SUSTAINED as to the following statements in Plaintiff's Affidavit, which directly

---

[22] Id.

[23] Document No. 45, ex. A.

[24] Document No. 48 at 1-8.

contradict his deposition testimony: "No sobriety test";[25] "At no time prior to arriving at the police station was there any type of field sobriety test conducted."[26]

The City's specific objections are SUSTAINED as to the following statements, which lack foundation: "Officer Pannell's stop was pretext and in support of the City of Rosenberg's stated policy of unconstitutional unfettered officer discretion";[27] "It is clear that discretion is the true policy of the Rosenberg Police Department.";[28] "At no time did officer Pannell even consider using the standard traffic stop procedure, called 'the Seven Step violator contact/or proper police procedure as taught by law enforcement academies across the state.'"[29]

The City additionally objects to Plaintiff's filing in the summary judgment evidence the entire deposition transcript of Chief of Police Robert Gracia,[30] as to which it argues Plaintiff has

---

[25] Document No. 45, ex. A at 6. *Cf.* Document No. 34, ex. H at 88:4-89:15 (testifying that Eiteman perceived Pannell to be administering on Plaintiff a field sobriety test incorrectly).

[26] Document No. 45, ex. A at 7. *Cf.* Document No. 34, ex. H at 88:4-89:15 (testifying that Eiteman perceived Pannell to be administering a field sobriety test on Plaintiff incorrectly).

[27] Id. at 8.

[28] Id. at 10.

[29] Id. at 3.

[30] Document No. 45, ex. B.

6

failed to show relevance.[31] It is incumbent upon Plaintiff to cite to specific testimony from the transcript if it has pertinence to the Motion for Summary Judgment. *See* Jones v. Sheehan, Young & Culp, P.C., 82 F.3d 1334, 1338 (5th Cir. 1996). Exclusion of the transcript itself is therefore unnecessary, and the City's objection to its being filed is OVERRULED.

Finally, the City specifically objects to Deposition Exhibit 5 to Plaintiff's Exhibit B, which appears to be a timeline prepared by Plaintiff's attorney purporting to describe the sequence of events displayed in the dash camera recording.[32] The City's objection for lack of foundation is SUSTAINED.

All of these portions to which objections are sustained are therefore STRICKEN, and the remaining objections are OVERRULED.

### III. Motion for Summary Judgment

A. Legal Standard

Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

---

[31] Document No. 48 at 8-9.

[32] *Id.* at 10. Plaintiff's Exhibit B is located at Document No. 45-19 at 10 of 11 to Document No. 45-20 at 1 of 11

matter of law." FED. R. CIV. P. 56(a).[33] Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice. Id. "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." Id. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record [. . .]; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Id. 56(c)(3).

In considering a motion for summary judgment, the district court must view the evidence "through the prism of the substantive evidentiary burden." Anderson v. Liberty Lobby, Inc., 106 S. Ct.

---

[33] The City combines its Motion to Dismiss and Motion for Summary Judgment in a single motion, which includes extensive citations to evidence not contained in the pleadings. Plaintiff's response is styled as a response only to a motion for summary judgment, and also contains citations to evidence not contained in the pleadings. The motion(s) are therefore analyzed as one under the summary judgment standard. SEE FED. R. CIV. P. 12(d), 56.

2505, 2513 (1986). All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986). "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper. Kelley v. Price-Macemon, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993). On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." Id. Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial." Anderson, 106 S. Ct. at 2513.

B. <u>Analysis</u>

1. <u>Section 1985 Claim</u>

Section 1985 establishes a cause of action for victims of a conspiracy by "two or more persons" to interfere with the victims' civil rights. 42 U.S.C. § 1985. The Fifth Circuit has identified the necessary elements of the claim:

> To state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege: (1) a conspiracy involving two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal

9

protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States. In so doing, the plaintiff must show that the conspiracy was motivated by a class-based animus.

Hilliard v. Ferguson, 30 F.3d 649, 652-53 (5th Cir. 1994). Beyond his conclusory allegations that there was a conspiracy, Plaintiff does not identify the alleged conspirators or present any evidence that any of the City's employees conspired with any person outside the City. He presents no evidence that anyone conspired for the purpose of depriving him of civil rights. Finally, he has not presented evidence of class-based animus or identified any class against which the animus was supposedly directed. The City is therefore entitled to summary judgment on Plaintiff's Section 1985 claims as a matter of law.

    2.  Section 1983 Claim

The Civil Rights Act of 1866 creates a private right of action for redressing the violation of federal law by those acting under color of state law. 42 U.S.C. § 1983; Migra v. Warren City Sch. Dist. Bd. of Educ., 104 S. Ct. 892, 896 (1984). Section 1983 is not itself a source of substantive rights but merely provides a

10

method for vindicating federal rights conferred elsewhere. <u>Albright v. Oliver</u>, 114 S. Ct. 807, 811 (1994).

In his Original Petition, Plaintiff alleges constitutional violations under the Fourth, Sixth, and Fourteenth Amendments.[34] The City contends that each claim is unsupported by the evidence.[35] The City further contends that there is no actionable Section 1983 claim because, even if Pannell violated Plaintiff's constitutional rights, there is no evidence that the violation was the result of an official policy or custom.[36]

A municipality can be held liable under § 1983 only when the municipality itself causes a constitutional deprivation. *See* <u>City of Canton v. Harris</u>, 109 S. Ct. 1197, 1203 (1989); <u>Monell v. Dept. of Soc. Servs.</u>, 98 S. Ct. 2018, 2037-38 (1978). This requires the execution of an official city policy or custom which results in the injury made the basis of the § 1983 claim. <u>Bd. of County Comm'rs v. Brown</u>, 117 S. Ct. 1382, 1388 (1997); <u>Monell</u>, 98 S. Ct. at 2035-36. Proof of municipal liability sufficient to satisfy <u>Monell</u> requires: (1) an official policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that

---

[34] Document No. 1, ex. 1 ¶¶ 1, 2, 7, 9, 12, 21, 23-24.

[35] Document No. 34 at 9-13. The Original Petition also alleged violations of the Eighth Amendment, but Plaintiff now concedes that he has no Eighth Amendment claim. Document No. 1, ex. 1 ¶ 4.

[36] Document No. 34 at 9-21.

11

policy or custom. Pineda v. City of Houston, 291 F.3d 325, 328 (5th Cir. 2002). A high standard of proof is required before a municipality can be held liable under § 1983. See Snyder v. Trepagnier, 142 F.3d 791, 796 (5th Cir. 1998); see also Brown, 117 S. Ct. at 1394 ("Where a court fails to adhere to rigorous requirements of culpability and causation, municipal liability [improperly] collapses into *respondeat superior* liability"); Canton, 109 S. Ct. at 1208 (O'Connor, J., concurring) (stating that § 1983 liability should not be imposed absent a showing of "a high degree of fault on the part of city officials").

For purposes of municipal liability, an official policy may be (1) a policy statement, ordinance, or regulation, or (2) "a persistent, widespread practice of City officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy." Piotrowski v. City of Houston, 237 F.3d 567, 579 (5th Cir. 2001) (quoting Webster v. City of Houston, 735 F.2d 838, 841 (5th Cir. 1984) (*en banc*)). "The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts." Spiller v. City of Texas City, 130 F.3d 162, 167 (5th Cir. 1997). Here, Plaintiff does not identify an official written policy sanctioning unlawful arrests, unreasonable seizures, or excessive force. Nor does

Plaintiff provide specific facts or evidence supporting a custom or "persistent, widespread practice" that was the moving force behind the constitutional violations that Plaintiff alleges were committed by Officer Pannell.

The City has produced its police department's written General Orders that govern proper police conduct during traffic stops.[37] Plaintiff does not challenge any of the City's written policies as being unconstitutional or the cause of any unconstitutional behavior by Officer Pannell, but instead argues that they were either not complied with or were inapplicable.[38] Plaintiff contends that "[t]he true policy of the City of Rosenberg is 'officer discretion' and it was, is, and will be, implemented indifferently to known civil rights."[39] This conclusory argument has no evidentiary support in the summary judgment record. To the contrary, the record consists of uncontroverted evidence that the

---

[37] Document No. 34-7 at 29-78 of 78.

[38] Document No. 45 at 13. Plaintiff asserts that Chief Gracia testified "[n]o less than 30 times" that the City's written policies were not complied with or inapplicable. Id. at 13. Plaintiff's citations to excerpts of the Chief's testimony do not support this assertion. Id. at 7-8.

[39] Document No. 45 at 11. Plaintiff further alleges a policy of officer discretion "to arrest citizens for traffic conditions the officers cause, resulting in a 'catch 22' for the citizens of the state of Texas." Id. at 18. The Court need not consider whether this putative policy is unconstitutional as Plaintiff does not contend, nor is there any summary judgment evidence to establish that he was pulled over for a traffic violation caused by a police officer.

13

City provides its written policies to all police officers, requires its officers to be familiar with the policies, and disciplines officers who do not comply with the law or policies, which prohibit unconstitutional actions such as the use of excessive force.[40] Although the City's written policies necessarily expect some officer discretion within the bounds of the written policies, Plaintiff presents no evidence to support his core claim that the City or its police chief had given or allowed its officers "unfettered" discretion to detain, arrest, and employ force against persons in violation of their constitutional rights.

Moreover, Plaintiff neither alleges nor furnishes any summary judgment evidence to prove that the City's alleged policy of vesting its police officers with unfettered discretion to abuse people's constitutional rights has ever resulted in any violation of anyone's rights apart from the occasion in question. Indeed, Chief Gracia testified that after serving the City for approximately 33 years, he is not aware of any information showing that either he or the City's governing body was aware or even informed of the existence of "any prior incident in which a police officer has injured a detainee unnecessarily under circumstances

---

[40] Document No. 34, ex. D at 3; see also, e.g., General Order 130, id., ex. P at 2 ("Treat your choices to use force with utmost seriousness. . . . Exceeding reasonable applications of force may expose you to disciplinary action, civil liability and criminal prosecution.").

14

similar to those Eiteman alleges in his lawsuit."[41] Hence, there is no summary judgment evidence of any "persistent, widespread practice of City officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy." Piotrowski, 237 F.3d at 579. Plaintiff argues, however, that municipal liability may be imposed for a single decision, citing Brown v. Bryan Cnty., 219 F.3d 450, 462 (5th Cir. 2000), the Fifth Circuit's decision after remand from the Supreme Court.[42] Brown is distinguished by dramatically different facts from those established in this case.[43] The Fifth

---

[41] Document No. 34, ex. D at 3.

[42] Document No. 45 at 18-19.

[43] In Brown, where a reserve deputy officer to whom the County Sheriff had given no training, caused severe knee injuries to the plaintiff by using excessive force while making an arrest without probable cause, the Fifth Circuit observed that the County Sheriff's "decision not to train [the reserve officer] constituted a policy decision for which the County is liable." Brown, 219 F.3d at 453. Furthermore, there was evidence that the County had not even given to the offending officer written documentation describing his duties as a reserve officer and did not supervise the reserve officer even though it knew he had a recent criminal record, including a misdemeanor assault and battery. The officer himself admitted "taking down" to the ground one fourth or one third of all twelve people he had arrested in his first weeks as a reserve officer. Id. at 462.

In stark contrast, in this case there is no summary judgment evidence of any failure to train Officer Pannell. To the contrary, the uncontroverted summary judgment evidence is that Officer Pannell before the event in question had received over 1,500 hours of training as a peace officer, including training focused on correct arrest procedures and limitations on the use of force, that

Circuit's analysis on remand of the exceptional facts in Brown met the exacting requirement set out by the Supreme Court: "To the extent that we have recognized a cause of action under § 1983 based on a single decision attributable to a municipality, we have done so only where the evidence that the municipality had acted and that the plaintiff had suffered a deprivation of federal rights also proved fault and causation." Bd. of Cnty. Comm'rs v. Brown, 117 S. Ct. 1382, 1389 (1997). Here, unlike Brown, there is no summary judgment evidence that the City or its Police Chief as policymaker made any "single decision" that was the "moving force" behind, or the direct cause of, Officer Pannell's alleged violations of Plaintiff's constitutional rights on the night Pannell arrested Plaintiff.

The City makes a persuasive argument from the summary judgment evidence that Officer Pannell did not violate any of Plaintiff's constitutional rights when he detained and arrested him, and that he did not employ force that was objectively unreasonable. Regardless, because Plaintiff filed his case against only the City, the determining factor here is that Plaintiff has produced no summary judgment evidence to support his claim that Pannell's

---

he was licensed by the Texas Commission on Law Enforcement Standards and Education, that he had been informed of and received copies of the City's General Orders for police conduct during an arrest, and that he had almost two full years of experience as a Rosenberg police officer, all without having been charged with any meritorious claim of using excessive force. Document No. 34, ex. D, E, L, M.

16

allegedly unconstitutional actions in that isolated incident were the result of an unconstitutional officially promulgated City policy or a policy adopted by virtue of a well-known practice or custom. Defendant City of Rosenberg is entitled to summary judgment as a matter of law.

IV. Order

For the foregoing reasons, it is

ORDERED that Defendant's Motion to Dismiss and for Summary Judgment (Document No. 34) is GRANTED, and Plaintiff Robert Steven Eiteman's claims are DISMISSED with prejudice.

The Clerk will enter this Order and provide a correct copy to all parties.

SIGNED at Houston, Texas, on this 9TH day of October, 2013.

EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE

17